**O'FLAHERTY, Plaintiff-Appellee, v. INDUSTRIAL COMMISSION, Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County

No. 3734.    Decided December 20th, 1944.

HORNBECK and GEIGER, JJ., and SHERICK, J., of the Fifth District, sitting by designation in place of BARNES, P. J.

John A. Connor and John D. Connor, Columbus, for plaintiff-appellee.

Thomas J. Herbert, Attorney General, Robert E. Hall and Albertus B. Conn, Asst. Attys. General, Columbus, for defendant-appellant.

## OPINION

By THE COURT:

The application for rehearing is based largely upon the fact that this Court in its original opinion did not comment upon the evidence of Dr. Robert E. Barnes, (Record, pp. 107-130), but confined its comments chiefly to the testimony of the physicians produced by the Commission.

Dr. Barnes was called as a witness on behalf of plaintiff, and from his testimony, without detailing the same, was well qualified by reason of his medical education and long course of active experience in the treatment of various heart afflictions, to testify as an expert, and counsel is well justified in commenting upon the fact that the Court seemed to neglect the testimony of this witness, and to rely more upon the testimony of the witnesses of the Commission.

Since the matter was called to our attention we have read and re-read the entire testimony of this physician and are anxious to give it all the weight to which it is entitled. The testimony is too long to permit us to examine it in detail, but we will assume that counsel has selected that portion of Dr. Barnes' testimony which will most strongly support the application fer rehearing.

Counsel especially calls our attention to pages 108, 109, 112 and 131 of the bill of exceptions.

After making inquiry as to a patient afflicted with cardiovascular-renal disease, the Doctor was asked to state briefly what was meant by this medical term, and replied that "it is a combination of heart, kidneys—heart and kidney disease, associated with disorders of the vascular and nervous system". The Doctor was inquired: "Does unusual exertion have any effect in this disease, Doctor?" And he replied: "In my opinion, yes". He was asked whether the fact that a patient afflicted with this disease died within six weeks following a history of unusual strain would be of any significance, to which the Doctor replied in the affirmative, and being asked what significance it would have, the Doctor recited certain facts that "a man fifty-nine years of age— and doing anything unusual in the way of physical or mental exertion might rush into some of the complications of vascular disease known here as cardiovascular-renal disease".

A hypothetical question was then propounded to the Doctor, and he was asked whether assuming the facts stated to be true would he have an opinion, to which the Doctor replied,

"I would". And being asked, "What is that opinion, Doctor?", he again recited the prominent facts in the history of the case and stated that it was his opinion that "the initial lesion was some form of intracardiac accident, which is one of the most common complications of hypertension or cardiovascular-renal disease. * * * And this may have been further complicated by certain kidney condition. * * *" The Doctor further stated: " * * * it is my opinion this man started with—had that when he went to work this time, some signs of cardiovascular-renal disease—that part was established; he had unusual physical effort. He had many of these cardinal symptoms of intracardiac complication, and the symptoms and the fact that he died afterwards, are quite convincing that the unusual effort —the fact that he had cardiac disease or hypertension had a great deal to do with his death."

On page 131, the Doctor was asked whether he was able to give an opinion as to whether or not the patient probably would have died, if the assumption of exertion were disregarded, to which he replied: "All I can say about exertion, you have a man with a diseased structure—a physical, unusual physical or mental disturbance is going to increase the liability of complication to that syndrome."

In passing, we wish to state that the expression used by the Doctor, "the initial lesion was some form of intracardiac accident, which is one of the most common complications of hypertension or cardiovascular-renal disease", had no reference to a physical accident such as it defined in **Malone v Industrial Commission, 140 Oh St, 293,** but had reference to some mishap that may have occurred to his physical structure due to the disease from which he was suffering, such as for example cardiac thrombosis.

Dr. Barnes testified, "The exertion of the lifting of the 145 pound package", followed by the symptoms enumerated "that were continuous until his death, and the cause of his death". This statement of the Doctor's in the bill of exceptions is not quite clear.

We examine the Doctor's testimony under the rules laid down in **Drakulich v Industrial Commission, 137 Oh St, 82,** syl 2 and 3 which are to the effect that causal connection between an injury to a person and his subsequent death involves a scientific injury, such causal connection must be established by the testimony of medical witnesses competent to testify on this subject and that testimony that a person's death from cancer of the liver **could** have resulted from previous injury to his back is insufficient to prove causal con-

nection between such injury and death. "The proof in such case must establish a probability not a mere possibility".

See **Drew v. Commission, 136 Oh St, 499; p. 501; Kuhn v Banker, 133 Oh St, 304; p. 312; Commission v Lathrop, 52 Oh App., 55.**

The Doctor stated that a man 59 years of age and doing anything unusual in the way of physical or mental exertion "might rush into some of the complications of the vascular disease."

The Doctor also stated "the fact that he had cardiac disease or hypertension had a great deal to do with his death".

We are of the opinion that this Doctor's testimony falls short of the requirements of the Drakulich case and we are still of the opinion as stated by us in our original decision:

"* * * there is in this case no evidence, first, establishing the fact by competent testimony that the decedent suffered an accident in the loading of the freight car; and, second, there is no sufficient evidence to establish the fact that if he did suffer such accident that the same accelerated the death of the decedent due to the prior existence of his disease."

Application for rehearing denied.

HORNBECK, GEIGER and SHERICK, JJ., concur.

HORNBECK, J., concurring.

I concurred in the original decision because of lack of proof that plaintiff's decedent suffered an accidental injury, as discussed at pages 10 and 11 of said opinion, and therefore concur in the decision denying the application for rehearing.